Paul Otto **RENAUT**, Appellant,

v.

**Paula S. (Renaut) KULLMAN,**
**Respondent.**

**No. WD 63557.**

Missouri Court of Appeals,
Western District.

Jan. 11, 2005.

Dana L. Parks, Kansas City, MO, for appellant.

David J. Siscel, Kirkwood, MO, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

On December 8, 1992, the Circuit Court of Jackson County entered a decree dissolving the marriage of Paul O. Renaut ("Father") and Paula S. (Renaut) Kullman ("Mother"). Three children were born of the marriage: Heather G. Renaut ("Heather"), born December 23, 1980;

Holly R. Renaut ("Holly"), born December 15, 1983; and Ryan P. Renaut ("Ryan"), born March 14, 1985. Father was ordered to pay Mother, the childrens' sole physical custodian, $333.00 per month per child as child support, commencing January 1, 1993. The circuit court modified the decree on February 5, 2001, and again on November 5, 2003. Father appeals the November 5, 2003 judgment, arguing that it must be reversed since there was no substantial evidence to support it. We reverse in part, affirm in part, and remand for further proceedings.

This case was submitted to the trial court on the pleadings after the parties jointly filed written stipulations of fact. Mother and the two youngest children (Holly and Ryan) all reside together in Missouri and have done so continuously since the entry of the decree of dissolution in December 1992. The oldest child, Heather, is emancipated. With the exception of a few weeks per year when they visit Father, who resides in Pennsylvania, Holly and Ryan have resided at all times with Mother, who has retained physical care, custody, and control of them. Mother filed her "Motion to Modify Child Support Order" in the Circuit Court of St. Louis County on September 4, 2002, but the action was subsequently removed to the Circuit Court of Jackson County. Father filed his response to Mother's Motion on May 30, 2003.

Mother's monthly gross income is $1,954.00. The only evidence of her monthly expenses and those of Holly and Ryan was presented to the trial court in a document titled "Statement of Income and Expenses of Paula Sue Kullman." Father's monthly gross income is $8,075.00. The only evidence of his monthly expenses was presented to the trial court in a document titled "Petitioner's Income and Expense Statement." Mother and Father

submitted a jointly-prepared Form 14 which showed that the presumed child support amount ("PCSA") based on the above incomes and two children is $1,675.00 per month. Based on their relative earnings, Father's proportionate share of the PCSA is 81% (or $1,357.00 per month), while Mother's proportionate share is 19% (or $318.00 per month). Compared to the Form 14 relied on by the trial court in entering the immediately prior (February 5, 2001) child support order, the parties' joint Form 14 showed a 20% or greater increase in the PCSA for Holly and Ryan. By agreement of the parties, their Form 14 did not take into account any post-secondary educational expenses for Holly or Ryan, which Mother and Father agreed to set forth separately.

In the Spring 2002 semester, Holly began her post-secondary education by enrolling at St. Louis Community College ("SLCC"). Holly's expenses for this semester, which included only tuition and fees, were $387.00. Starting with the Fall 2002 semester, Holly began attending Central Missouri State University ("CMSU") in Warrensburg. During the Fall 2002 and Spring 2003 semesters, Holly's expenses, which included tuition and fees, books, and dormitory costs for room and board while residing in Warrensburg, were $9,199.00 ($4,370.00 for the Fall 2002 semester and $4,829.00 for the Spring 2003 semester).[1] Holly then returned to SLCC for the Summer 2003 semester, during which her expenses were $198.00 in tuition and fees. Holly's expenses for the Fall 2003 semester at CMSU were estimated to be $5,138.00.

Ryan began his first year at CMSU as a full-time student in the Fall 2003 semester. The expenses incurred by Ryan during that semester, which included tuition and fees, books, and dormitory costs for room and board while residing in Warrensburg, were estimated to amount to $5,304.00. Both Holly and Ryan are capable of satisfactorily performing their coursework at a college level.

On November 5, 2003, the trial court modified the February 5, 2001 judgment. In so doing, the court expressly found that since the date of the prior (February 5, 2001) child support order, which was entered when both Holly and Ryan were both still attending high school, "[t]here has been a change of circumstances so substantial and continuing as to make the Court's prior orders as to child support unreasonable[.]" The court further found that those "changed circumstances include but are not limited to the increased expenses [for Holly and Ryan] due to college tuition, books, fees, room and board; and a greater than 20% increase in the form 14 presumed child support amount[,]" as well as "a substantial increase in income" by Father.[2]

The trial court's November 5, 2003 judgment contained four major components. First, commencing on November 1, 2002, the court ordered that Father's combined monthly child support payment for Holly and Ryan be reduced from the previous amount of $1,028.00 per month to $1,011.00 per month.[3] Second, the court also or-

---

1. Holly applied for and received an unsubsidized federal student loan for the 2002–2003 school year at CMSU in the amount of $2,587.00. The proceeds of that loan were paid to CMSU to defray Holly's educational expenses.

2. The record shows that from the time of the prior child support order in February 2001 until the time of this matter was submitted to the trial court for decision in August 2003, Father's monthly gross income went from $6,750.00 to $8,075.00—an increase of nearly 20%.

3. The record shows that the trial court arrived at this figure by accepting the parties' jointly-prepared Form 14 and then rebutting

dered Father to pay Mother the sum of $5,943.75 "in the nature of support" as his equitable share of the $9,199.00 in post-secondary educational expenses incurred by Holly from November 1, 2002 through the end of May 2003. Third, in addition to these amounts, the court further ordered Father to "pay to Mother, or directly to the school, if feasible, 81% of the cost each year [thereafter] for each child attending a post-secondary college, university, or vocational/technical school, state or private," subject to certain additional limitations and expense caps not at issue here. Finally, Mother and Father were both ordered to pay their own attorney's fees. This appeal followed.

In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. .... In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is sup-

ported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation.

*Conrad v. Conrad,* 76 S.W.3d 305, 308–09 (Mo.App. W.D.2002) (internal citations omitted).

In his first point, Father argues that the trial court erred in awarding Mother $1,011.00 per month in combined basic child support for Holly and Ryan because when a custodial parent presents evidence that the children's monthly support costs are lower than the PCSA as calculated under Form 14, the trial court must cite specific factors supporting the award based on the higher amount or it is an abuse of discretion. He further claims that since the monthly expenses listed by Mother for the two children on her income and expense statement, which was the only evidence before the trial court as to those expenses, were substantially less than the PCSA as determined in the parties' Form 14 and the trial court did not make a finding that it considered all relevant factors as required by Rule 88.01 in making the higher award, the award must be reversed.

■■■ "When a party presents evidence controverting a presumed fact, the fact must then be determined from the evidence as if no presumption had ever been in effect." *Costello v. Miranda,* 137

---

the PCSA shown therein ($1,675.00 per month) downward by the sum of $427.00 per month to reflect the fact that food and housing for Holly and Ryan would be provided by CMSU during roughly 8 of every 12 months

in the calendar year. This left $1,248.00 in non-variable monthly expenses, Father's 81% proportionate share of which is $1,011 per month.

S.W.3d 498, 500–01 (Mo.App. E.D.2004). Accordingly, when a custodial parent gives evidence as to the actual financial needs of the children under that parent's care, the PCSA as determined under Form 14 is considered to have been rebutted. *Honderick v. Honderick,* 984 S.W.2d 205, 211 (Mo.App. W.D.1999). Thus, when the custodial parent presents evidence that the demonstrable needs of the child are, in fact, *less* than the PCSA as established by Form 14, the actual amount of child support awarded to the custodial parent may be rebutted downward. *Peery v. Peery,* 933 S.W.2d 912, 916 (Mo.App. W.D.1996).

■ While a custodial parent's presentation of evidence of need in an amount less than the PCSA under Form 14 will rebut the Form 14 presumption of correctness, it does not mandate that the lower figure be applied to compute the amount of the award, because "[i]t is within the trial court's discretion to award a just amount based on all the considerations of Rule 88.01." *Costello,* 137 S.W.3d at 501; *see also Honderick,* 984 S.W.2d at 212; *Foraker v. Foraker,* 133 S.W.3d 84, 97 (Mo.App. W.D.2004). In other words, even if the custodial parent's evidence is that the childrens' financial need is lower than the parents' combined child support costs established by Form 14, and even if such evidence is accepted and found to be credible by the trial court, the award need not necessarily be based on the lower amount established by that evidence. "However, if the award is based on the higher, rather than the lower, amount, the trial court must cite to the factors supporting the higher amount[.]" *Costello,* 137 S.W.3d at 501. "[T]he trial court's failure to do so is an abuse of discretion[,]" *id.,* because "[t]he amount of support awarded must be limited to the demonstrable financial need to support the child of the party receiving the support." *Honderick,* 984 S.W.2d at

211; *Buder v. Buder,* 824 S.W.2d 483, 485 (Mo.App. E.D.1992). Thus, "[a]lthough it is certainly within the trial court's discretion to award the higher amount if it determines that amount to be just, the trial court must explain its decision to do so, citing to the specific factors supporting the award." *Costello,* 137 S.W.3d at 501.

■ In the case *sub judice,* the record shows that the custodial parent (Mother) presented evidence, in the form of her income and expense statement, of the actual monthly expenses she incurred for the support of Holly and Ryan. As correctly noted by Father, this statement, which was filed in September 2002, indicated that Mother expended a total of only $334.00 per month to support Holly and Ryan, and that was attributed to their health insurance premiums. Meanwhile, as to all other expenses related to Holly and Ryan, Mother inexplicably assigned a monthly total of "$0.00" in each of the following categories: food, clothing, medical care, dental care, prescription drugs, recreation, laundry and cleaning, and personal care. Nor did Mother's expense statement specify what portion, if any, of her monthly mortgage, utility, or automobile expenses were attributable to the support of Holly and Ryan during the year, including the summer months when they return from CMSU to live with her in her St. Louis County home.

■ Of course, when determining a child's support needs, the trial court is not restricted to considering only the custodial parent's income and expense statement, but should consider all relevant evidence presented at trial. *Id.* (citing *Elliott v. Elliott,* 920 S.W.2d 570, 580 (Mo.App. W.D. 1996)). The only other relevant evidence presented to the trial court on the issue of the childrens' support needs was Father's June 2003 income and expense statement, which indicates that he incurs $167.00 per

month in non-college related "Other Expenses" for the children. As such, the evidence presented at trial showed that the actual monthly expenses for Holly and Ryan were, at most, $501.00—which is nowhere near the $1,248.00 in Form–14 based presumed monthly support expenses the trial court used to determine Father's monthly support obligation.

As noted *supra*, while the trial court was not required to use the lower ($501.00) figure in computing the amount of the award, before using the higher ($1,248.00) figure, it *did* have to cite "specific factors supporting an award of child support based on the calculated combined child support costs of the parents which were greater than the actual expenses" for Holly and Ryan, as indicated by the evidence before it. *Honderick*, 984 S.W.2d at 212; *see also Foraker*, 133 S.W.3d at 97. As the trial court used the higher figure to compute its award of $1,011.00 per month in basic child support for Holly and Ryan but cited no such factors, it abused its discretion. Accordingly, we must reverse this portion of the judgment and remand to the trial court for a proper determination of Father's reasonable child support obligation for the two children, based on their demonstrable monthly financial need and all other relevant factors required by Rule 88.01. *Id.* Point granted.

In his second (and final) point, Father argues that the trial court's award of $5,943.75 to Mother was erroneous because the evidence is insufficient to sustain it on appeal in that "there was no evidence to support the additional award of support" and Mother presented no evidence "that the college expenses are in addition to the children's other expenses or that these could not be covered with the amount of [child] support" Mother was awarded.

Father's argument, which he fails to support with any applicable Missouri case law, is without merit. Mother had no obligation to prove that Holly's college expenses were not "covered" by the amount Father was ordered to pay Mother in Form 14 basic child support payments, because Father, as the party challenging a judgment modifying a decree of dissolution as to child support, bears the burden of demonstrating error on the part of the trial court. *Bell v. Gilliam*, 852 S.W.2d 198, 200–01 (Mo.App. S.D.1993). Furthermore, such college expenses (1) " 'are *not* included in the schedule of basic child support obligations' " under Form 14, *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 877 (Mo.App. W.D.2001) (emphasis in original); and (2) may, at the trial court's discretion, be separately stated and awarded in lieu of including them in the Form 14 calculation or rebutting the Form 14 PCSA, *id.* at 878, which is precisely what happened here. Indeed, in *Foraker*, this court recently rejected an argument almost identical to the one now made by Father and reiterated, on the basis of our decision in *Ricklefs*, that a trial court may "order the parent to pay both the presumed child support amount and [a] portion of the extraordinary [post-secondary educational] expenses if the trial court determines, in its discretion, that such an award is appropriate based upon all relevant factors, including the financial needs and resources of the parents and the children," *Foraker*, 133 S.W.3d at 98, subject only to the proviso that "[t]he child support award in such situations must not include a redundancy in the children's living expenses already, and must otherwise be just and reasonable." *Id.* (citing *Gordon v. Gordon*, 924 S.W.2d 529, 536 (Mo.App. W.D.1996)). As Father points to nothing in the record indicating that the trial court did not consider all of the factors relevant to its retroactive award of $5,943.75 to Mother repre-

senting his equitable share of the $9,199.00 in post-secondary educational expenses incurred by Holly, including the redundancy or "overlap" issue he attempts to raise, Father's second point is denied.

The award to Mother of $1,011.00 per month in basic child support for Holly and Ryan is reversed and remanded to the trial court for a proper determination of Father's just and reasonable child support obligation for the two children, based on their demonstrable monthly financial needs and all other relevant factors required by Rule 88.01.[4] In making this determination, the trial court is also directed to ensure that the basic child support award it makes on remand does not include a redundancy in any item of expense which has already been taken into account in its prior awards for post-secondary educational expenses. In all other respects, the judgment of the trial court is affirmed.

All concur.

---

4. On remand, the trial court may, in the exercise of its discretion, permit the parties to present further evidence on this issue.