

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| RUTH F. BARTSCH, | ) | |
| | ) | |
| Appellant, | ) | WD81750 |
| | ) | |
| v. | ) | OPINION FILED: April 30, 2019 |
| | ) | |
| BMC FARMS, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Miller County, Missouri**
The Honorable Peggy D. Richardson, Judge

Before Division Two: Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Ruth F. Bartsch ("Bartsch") appeals from the trial court's judgment entered to enforce an earlier judgment that partitioned in kind several tracts of real property owned by Bartsch and BMC Farms, LLC ("BMC Farms") pursuant to the terms of a settlement agreement. Bartsch argues on appeal that the trial court erred because a proper survey was not prepared to partition the real property and because BMC Farms misled the trial court. Bartsch also argues that we should remand this matter because the legal file does not contain necessary exhibits. Finding no error, we affirm.

## Factual and Procedural History

In September 2015, Bartsch filed a petition ("petition") for the partition of approximately 731.68 acres of real property in Miller County ("property"). The petition alleged that Bartsch owned a one-third interest in the property as a tenant in common with Donald R. Brown, Gerald R. Brown, Stephen E. Brown, Susan Bloomquist, Sandra Washburn, and Sharron Wolf (collectively "six co-tenants in common"), each of whom owned a one-ninth interest. The petition further asserted that the six co-tenants in common were attempting to sell their interests in the property to BMC Farms and that Bartsch did not wish to sell her interest in the property. Thus, the petition asked the trial court to enter judgment partitioning Bartsch's one-third interest in the property from the collective two-thirds interest of the six co-tenants in common.

Bartsch filed a first amended petition for partition ("first amended petition") in December 2015. The first amended petition alleged that, on information and belief, the six co-tenants in common had transferred their collective interests in the property to BMC Farms. The first amended petition added BMC Farms as a defendant. The first amended petition reiterated that Bartsch did not wish to sell her interest in the property to BMC Farms and again asked the trial court to enter judgment partitioning Bartsch's interest in the property.

In September 2016, BMC Farms filed both an answer to Bartsch's first amended petition and a counterclaim. The answer alleged that BMC Farms was now Bartsch's sole co-tenant in common. The answer further alleged that the property was not susceptible to being partitioned in kind without causing prejudice to the parties. Thus, the answer asked the trial court to deny the petition's request for partition in kind and to order instead that

2

the property be sold with the proceeds divided between Bartsch and BMC Farms according to their respective interests. BMC Farms' counterclaim reiterated the request to partition the property by sale and to divide the proceeds.

On March 1, 2017, Bartsch voluntarily dismissed all defendants other than BMC Farms, and the trial court set the case for a bench trial on November 8, 2017.

On the day of trial, Bartsch and BMC Farms announced that they had reached a settlement. BMC Farms explained that the property is comprised of five tracts, and that Bartsch and BMC Farms had reached an agreement to divide the tracts so that BMC Farms would receive three tracts, and Bartsch would receive one tract. The parties agreed the remaining tract would be divided with Bartsch receiving the portion of the tract that lies south of a creek bisecting the tract, while BMC Farms would receive the portion of the tract to the north of the creek. The parties agreed to split the cost of a survey to establish the centerline of the creek, since that would serve as the dividing line for that tract. In addition, because the division of the property pursuant to the terms of the settlement did not equitably divide the property based on its value, the parties agreed that BMC Farms would pay Bartsch $62,000, with $31,000 paid within thirty days of the entry of a judgment incorporating the terms of the settlement, and with the remaining $31,000 paid following the creek survey and the exchange of required deeds. On January 12, 2018, the trial court entered a judgment ("January 12, 2018 judgment") incorporating the terms of the settlement agreement. Neither Bartsch nor BMC Farms appealed the January 12, 2018 judgment.

On April 18, 2018, BMC Farms filed a motion to enforce the January 12, 2018 judgment pursuant to Rule 74.07[1] ("motion to enforce the judgment"). The motion to enforce the judgment alleged that BMC Farms had satisfied all of its obligations under the judgment, including providing a payment of $31,000 to Bartsch; preparing and executing a warranty deed to Bartsch reflecting the transfer of property to her that was required by the January 12, 2018 judgment; paying for the survey of the tract of land on the property to be divided along the creek; and making an agreement with Bartsch's attorney that BMC Farms would deduct Bartsch's half of the cost of the creek survey from the second $31,000 payment to Bartsch. The motion to enforce the judgment further alleged that Bartsch had failed and refused to execute and deliver a warranty deed to BMC Farms transferring the property to it required by the January 12, 2018 judgment. BMC Farms' motion to enforce the judgment alleged that, upon receipt of a warranty deed from Bartsch transferring the property to BMC Farms or upon entry of a judgment by the trial court conveying the property to BMC Farms, it would remit to Bartsch the second $31,000 payment, less Bartsch's share of the cost of the creek survey. The motion to enforce the judgment asked the trial court "to enter judgment divesting the title of the property from [Bartsch] . . . and vesting it in the name of [BMC Farms] in lieu of directing a conveyance thereof, with such judgment having the effect of a conveyance executed in due form of law."

---

[1]All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise noted. Rule 74.07 provides, in pertinent part, that "[i]f a judgment directs a party to execute or deliver a deed or other document or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. . . . If real . . . property is within the state, the court may enter a judgment divesting the title of any party and vesting it in others in lieu of directing a conveyance thereof, and such judgment has the effect of a conveyance executed in due form of law."

Bartsch filed a response to the motion to enforce the judgment. She disputed BMC Farms' assertion that it had complied with the January 12, 2018 judgment. Bartsch's response asserted that the survey, titled a "conditional line description," and warranty deeds she received were unacceptable. Bartsch argued that, contrary to assurances she received, the survey did not identify the twenty-seven acres she agreed to sell to BMC Farms in exchange for $62,000. Further, Bartsch asserted that the survey she received did not include the amount of total acreage Bartsch and BMC Farms would each receive, the date the survey was completed, a surveyor's seal or stamp, or the name of the surveyor. Bartsch claimed that the warranty deeds she received were also inaccurate in that they did not show the total amount of acreage awarded to Bartsch and BMC Farms, and they were not dated or certified. Bartsch summarized her argument as follows:

> I am entitled to know exactly how many acres I am selling; just as I am entitled to know how many acres I am receiving in the parcel that is being divided.
>
> . . . I am entitled to 1/3 of the total farm (732 acres) and the survey and warranty deeds should clearly state I own 244 acres minus the 27 acres I agreed to sell which brings the total to 217 acres.

(Emphasis omitted.)

The trial court issued a Rule 74.07 judgment ("Rule 74.07 judgment") on April 30, 2018. The Rule 74.07 judgment concluded that Bartsch "failed to comply with the Judgment entered on January 12, 2018, in that [Bartsch] . . . failed to transfer ownership of the above described property to [BMC Farms]." As such, the Rule 74.07 judgment, using the legal descriptions of the various tracts making up the property at issue, divested Bartsch of her interest in the property awarded to BMC Farms and vested said interest in BMC Farms in lieu of directing that Bartsch execute a deed, and divested BMC Farms of its

5

interest in the property awarded to Bartsch and vested said interest in Bartsch in lieu of directing that BMC Farms execute a deed. The Rule 74.07 judgment further ordered BMC Farms to pay Bartsch the second $31,000 payment less $1,750, Bartsch's share of the cost of the creek survey.

Bartsch appeals.

## Motion to Dismiss

Before addressing the merits of Bartsch's appeal, we must consider BMC Farms' motion to strike Bartsch's brief and to dismiss her appeal ("motion to dismiss the appeal"). The motion to dismiss the appeal asserts that Bartsch's brief fails to comply with Rule 84.04 in several respects: (1) the statement of facts does not comply with Rule 84.04(c) in that it does not include specific page references to the record on appeal; (2) the points relied on do not substantially follow the form required by Rule 84.04(d); (3) the argument does not comply with Rule 84.04(e) in that the points relied on are not separately stated, there is no statement indicating whether the claimed errors are preserved for appellate review, and the applicable standard of review is not included; and (4) Bartsch's cited authorities are abstract statements of the law and her brief fails to explain how the statements of law interact with the facts of this case.

"'An appellant who proceeds *pro se* is subject to the same procedural rules as parties represented by counsel, including the rules specifying the required contents of appellate briefs.'" *Johnson v. Mo. Dep't of Corr.*, 534 S.W.3d 869, 871 (Mo. App. W.D. 2017) (quoting *Nichols v. Div. of Emp't Sec.*, 399 S.W.3d 901, 902 (Mo. App. W.D. 2013)). "'Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that

6

have not been made.'" *Wallace v. Frazier*, 546 S.W.3d 624, 626 (Mo. App. W.D. 2018) (quoting *Summers v. Mo. Dep't of Corr.*, 459 S.W.3d 922, 923 (Mo. App. W.D. 2015)). The failure to comply substantially with Rule 84.04 preserves nothing for review and constitutes grounds for dismissing the appeal. *Id.* However, we prefer to resolve appeals on their merits, especially when we are able to discern the gist of the appellant's allegations of error. *Hoeper v. Liley*, 527 S.W.3d 151, 161 (Mo. App. W.D. 2017).

We agree that Bartsch's brief fails to comply with Rule 84.04 as alleged by BMC Farms. However, we are able to discern the substance of Bartsch's allegations of error on appeal without speculating or becoming an advocate. We therefore deny BMC Farms' motion to dismiss the appeal, and exercise our discretion to review *ex gratia* Bartsch's points on appeal.

## Standard of Review

We will sustain a judgment from a court-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

Bartsch asserts four points on appeal. Bartsch's points on appeal can be divided into three categories: (1) two complaints about the adequacy of the survey; (2) an assertion that the information provided by BMC Farms to the trial court was intentionally misleading; and (3) a claim that the legal file is incomplete because it does not include exhibits provided to the trial court.

7

*Adequacy of the Survey*

Points one and two challenge the adequacy of the survey mandated by the January 12, 2018 judgment and argue that because the survey was inadequate, the trial court erred in entering its Rule 74.07 judgment. Point one argues that a survey that complied with statutory and regulatory requirements was never completed and as a result, the conditional line description cannot be recorded with the county's recorder of deeds. Point two contends that the survey failed to determine the acreage and dimensions of all of the tracts making up the property. Bartsch's claims of error are without merit as they are premised on a fundamental misunderstanding of the January 12, 2018 judgment.

The January 12, 2018 judgment provided that one tract of land of the several that made up the property would be divided along the "centerline of Bear Creek." The January 12, 2018 judgment provided that Bartsch and BMC Farms "shall [split] equally the cost of having the property surveyed to more specifically set out and divide the real estate . . . described therein." When the parties announced their settlement to the trial court on November 8, 2017, they advised the trial court that they had agreed to "have the property surveyed for the creek" because Miller County "[had] records that [the parties could] utilize that [would] keep the costs down for the parties" in otherwise determining the legal descriptions of the other tracts being divided between Bartsch and BMC Farms. There was never an agreement by the parties, nor a decretal mandate in the January 12, 2018 judgment, to survey the entirety of the property. Nor did the January 12, 2018 judgment direct that a recordable survey be prepared to identify the centerline of Bear Creek. Instead, the January 12, 2018 judgment ordered exactly what the parties asked for pursuant to the reported terms of their settlement--a survey to permit division of one tract of land along

8

the centerline of a creek bisecting the tract. Bartsch's first and second points on appeal presume an obligation that was not a part of the parties' settlement agreement, and that was therefore not a part of the January 12, 2018 judgment.

Points one and two are denied.

### *Information Provided by BMC Farms to Trial Court*

Point three argues that the trial court erred in entering the Rule 74.07 judgment because BMC Farms misled the trial court by claiming it sent warranty deeds and a $31,000 payment to Bartsch in January 2018, and by asserting that Bartsch had possession of the check and warranty deeds for more than three months.

Bartsch's response to BMC Farms' motion to enforce the judgment did not dispute BMC Farms' recitation of these facts. "Arguments not raised before the trial court . . . are not preserved for review on appeal" because "[w]e will not 'convict a trial court of error on an issue that was not put before the trial court to decide.'" *Loutzenhiser v. Best*, 565 S.W.3d 723, 730 (Mo. App. W.D. 2018) (quoting *Barner v. Mo. Gaming Comm'n*, 48 S.W.3d 46, 50 (Mo. App. W.D. 2001)). Regardless, it is immaterial whether BMC Farms accurately identified the date on which it tendered warranty deeds and a check to Bartsch. Bartsch does not dispute receiving those documents at some point, and she concedes she has not signed the warranty deeds provided by BMC Farms. The Rule 74.07 judgment is supported by substantial evidence that Bartsch refused to perform the January 12, 2018 judgment regardless when documents were tendered to Bartsch.

Point three is denied.

*Legal File's Exclusion of Exhibits*

Point four asserts that we should remand this case because the legal file fails to include exhibits provided to the trial court. It is the appellant's responsibility to deposit with this court any exhibits necessary for the determination of a point on appeal. Rule 81.16(a). If the appellant does not have custody of the exhibits, the appellant may request that the party in possession of the exhibits either deposit the exhibits with the appellate court or deliver them to the appellant for deposit with the appellate court. *Id.* If there are exhibits essential to the disposition of Bartsch's claims of error on appeal, responsibility for their absence from the record on appeal is attributable to Bartsch, and not the trial court.

Point four is denied.

### Conclusion

The trial court's Rule 74.07 judgment is affirmed. Because the Rule 74.07 judgment we are affirming affects title to real estate, and describes, as required, the property to be divided between Bartsch and BMC Farms with sufficient certainty to act as a conveyance of that property in lieu of a conveyance in due form, the Rule 74.07 judgment is attached hereto as Appendix A. *See Medical Plaza One, LLC v. Davis*, 552 S.W.3d 143, 165 n.19 (Mo. App. W.D. 2018).


_____
Cynthia L. Martin, Judge


All concur

10

# Appendix A

Electronically Filed - Miller - April 27, 2018 - 05:40 PM

IN THE CIRCUIT COURT OF MILLER COUNTY, MISSOURI

**FILED**

APR 3 0 2018

GENISE BUECHTER
CIRCUIT CLERK
MILLER COUNTY, MO

RUTH F. BARTSCH,    }
                    }
    Plaintiff,      }
                    }
                    }
                    }
    v.              }    Case No. 15ML-CC00058
                    }
                    }
BMC FARMS, LLC,     }
                    }
    Defendants.     }
                    }
                    }

## JUDGEMENT

NOW ON THE 27th day of April, 2018 the above-captioned cause came on for hearing before the Court by telephone conference call. Defendant was present by its attorneys of record, McDorman & Parks, LLC. Plaintiff was present by her attorney of record, Douglas A. Parker.

The Court, being fully advised of the premises, enters the following:

1. On January 12, 2018, this Court entered its Judgment Entry and Order.

2. The Court ordered that the real estate situated in Miller County, Missouri and described as follows be awarded and transferred to Defendant by Plaintiff:

THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION ONE (1), TOWNSHIP THIRTY NINE (39) NORTH OF RANGE FIFTEEN (15) WEST OF THE 5TH P.M.

ALL THAT PART OF THE NORTHEAST QUARTER OF SECTION TWELVE (12), TOWNSHIP THIRTY-NINE (39) NORTH OF RANGE FIFTEEN (15) WEST OF THE 5TH P.M., LYING NORTH OF THE CENTER LINE OF BEAR CREEK, SAID CENTERLINE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A FLINTSTONE MARKING THE N ¼ CORNER OF SECTION 12, T 39N. R 15 W; THENCE S 00°55'10" W ALONG THE ¼ SECTION LINE 1208.44 FEET TO THE CENTERLINE OF BEAR CREEK AND THE POINT OF BEGINNING; THENCE LEAVING

Electronically Filed - Miller - April 27, 2018 - 05:40 PM

SAID ¼ SECTION LINE ALONG THE CENTERLINE OF BEAR CREEK THE FOLLOWING COURSES: THENCE S 73° 10' 29" E, 78.45 FEET; THENCE S 33° 47' 31" E, 172.94 FEET; THENCE S 35° 25' 20" E, 173.72 FEET; THENCE S 40° 02' 25" E, 145.80 FEET; THENCE S 88° 12' 36" E, 227.65 FEET; THENCE S 79° 51' 10" E, 147.54 FEET; THENCE S 72° 09' 03" E, 104.29 FEET; THENCE S 77° 16' 53" E, 79.79 FEET; THENCE S 82° 20' 08" E, 71.36 FEET; THENCE S 83° 29' 23" E, 103.63 FEET; THENCE S 76° 44' 22" E, 124.60 FEET; THENCE S 81° 11' 03" E, 113.09 FEET; THENCE S 51° 08' 11" E, 138.47 FEET; THENCE S 43° 31' 37" E, 143.24 FEET; THENCE N 60° 42' 27" E, 86.03 FEET; THENCE N 87° 18' 50" E, 105.37 FEET; THENCE N 63° 20' 08" E, 111.47 FEET, THENCE N 58° 49' 49" E, 137.13 FEET; THENCE N 67° 49' 21" E, 162.86 FEET; THENCE N 72° 01' 16" E, 109.72 FEET; THENCE N 79° 44' 19" E, 136.40 FEET; THENCE N 62° 12' 24" E, 115.40 FEET; THENCE N 78° 03' 11" E, 117.65 FEET; THENCE N 76° 49' 05" E, 73.32 FEET THENCE N 32° 53' 40" E, 74.34 FEET; THENCE N 85° 59' 45" E, 13.46 FEET TO THE RANGE LINE AND THE TERMINATION POINT OF SAID CENTERLINE.

ALSO, LOT ONE (1) OF THE SOUTHWEST QUARTER, AND THE NORTH HALF OF LOT TWO (2), OF THE SOUTHWEST QUARTER OF SECTION SIX (6), AND THE NORTH HALF OF LOT ONE (1) OF THE NORTHWEST QUARTER OF SECTION SEVEN (7), TOWNSHIP THIRTY-NINE (39) NORTH, OF RANGE FOURTEEN (14), WEST OF THE FIFTH PRINCIPAL MERIDIAN, AND CONTAINING IN ALL ONE HUNDRED FIFTY-FIVE AND SEVENTY-THREE HUNDREDTHS (155.73) ACRES, ACCORDING TO GOVERNMENT SURVEY.

ALSO, THE SOUTH HALF OF LOT NO. TWO (2) OF THE SOUTHWEST QUARTER OF SECTION NO. SIX (6), AND ALL OF LOT NO. TWO (2) OF THE NORTHWEST QUARTER OF SECTION SEVEN (7), SAVE AND EXCEPT 7.54 ACRES IN THE SOUTHWEST CORNER OF SAID LOT NO. TWO (2) OF THE NORTHWEST QUARTER OF SAID SECTION SEVEN (7), MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT NO. TWO (2); THENCE EAST ON THE QUARTER SECTION LINE 11.50 CHAINS; THENCE NORTH 28 DEGREES 22 MINUTES WEST 5.75 CHAINS; THENCE NORTH 57 DEGREES 45 MINUTES WEST 10.33 CHAINS TO THE WEST LINE OF SAID SECTION SEVEN (7); THENCE SOUTH ON THE SECTION LINE 10.58 CHAINS TO THE PLACE OF BEGINNING.

ALL OF SAID REAL ESTATE IS LOCATED IN TOWNSHIP THIRTY-NINE (39) NORTH, RANGE FOURTEEN (14) WEST OF THE FIFTH PRINCIPAL MERIDIAN.

Electronically Filed - Miller - April 27, 2018 - 05:40 PM

ALSO, THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 1, IN TOWNSHIP 39, OF RANGE 15, CONTAINING 80 ACRES, MORE OR LESS.

SAVE AND EXCEPT THAT PORTION DEEDED TO THE MILLER COUNTY COMMISSION DESCRIBED IN WARRANTY DEEDS FILED FOR RECORD AT INSTRUMENT NOS. 2014-1054, 2014-1055, 2014-1057, 2014-1058, 2014-1059, 2014-1060, MILLER COUNTY RECORDER'S OFFICE.

SUBJECT TO ALL RESTRICTIONS AND RESERVATIONS, CONDITIONS AND EASEMENTS OF RECORD.

3. A warranty deed was forwarded onto Plaintiff on January 15, 2018 reflecting the transfer described in the Judgment.

4. More than three (3) months have elapsed since the date of the January 12, 2018 Judgment Entry and the forwarding of the warranty deed onto Plaintiff, and, as of the date of this Motion, Plaintiff has failed and refused to execute and deliver the warranty deed transferring the property to Defendant as required under the terms of the January 12, 2018 Judgment.

5. Defendant has satisfied its obligations under the January 12, 2018 Judgment to the best of its ability, specifically:

a. Defendant has provided one payment of Thirty-One Thousand Dollars ($31,000.00) to the Plaintiff as per the Judgment;

b. Defendant has prepared and executed a deed to Plaintiff as per the January 12, 2018 Judgment;

c. Defendant has paid for the survey of the property as per the January 12, 2018 Judgment and was informed by opposing counsel through email that Defendant could deduct one half of the amount billed to Defendant for the cost of the survey from the second payment of Thirty-

One Thousand Dollars ($31,000.00) to be paid by Defendant to Plaintiff after the execution and delivery of the warranty deeds; and

d. Upon execution and delivery of the warranty deed by Plaintiff to Defendant, Defendant will provide Plaintiff with its second payment of Thirty-One Thousand Dollars ($31,000.00) less One Thousand Seven Hundred and Fifty Dollars ($1,750.00), which constitutes one half of the amount owed for the survey conducted per this Judgment and paid in full by Defendant.

WHEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

6. Plaintiff has failed to comply with the Judgment entered on January 12, 2018, in that Plaintiff has failed to transfer ownership of the above described property to the Defendant.

7. Due to Plaintiff's failure to adhere to the Judgment entered on January 12, 2018, this Court divests the title of the following described property, situated in Miller County, Missouri, from Plaintiff, and any other person holding interest therein, and vests said interest in the name of Defendant in lieu of directing a conveyance:

THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION ONE (1), TOWNSHIP THIRTY NINE (39) NORTH OF RANGE FIFTEEN (15) WEST OF THE 5TH P.M.

ALL THAT PART OF THE NORTHEAST QUARTER OF SECTION TWELVE (12), TOWNSHIP THIRTY-NINE (39) NORTH OF RANGE FIFTEEN (15) WEST OF THE 5TH P.M., LYING NORTH OF THE CENTER LINE OF BEAR CREEK, SAID CENTERLINE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A FLINTSTONE MARKING THE N ¼ CORNER OF SECTION 12, T 39N. R 15 W; THENCE S 00°55'10" W ALONG THE ¼ SECTION LINE 1208.44 FEET TO THE CENTERLINE OF BEAR CREEK AND THE POINT OF BEGINNING; THENCE LEAVING SAID ¼ SECTION LINE ALONG THE CENTERLINE OF BEAR CREEK THE FOLLOWING COURSES: THENCE S 73° 10' 29" E,

78.45 FEET; THENCE S 33° 47' 31" E, 172.94 FEET; THENCE S 35° 25' 20" E, 173.72 FEET; THENCE S 40° 02' 25" E, 145.80 FEET; THENCE S 88° 12' 36" E, 227.65 FEET; THENCE S 79° 51' 10" E, 147.54 FEET; THENCE S 72° 09' 03" E, 104.29 FEET; THENCE S 77° 16' 53" E, 79.79 FEET; THENCE S 82° 20' 08" E, 71.36 FEET; THENCE S 83° 29' 23" E, 103.63 FEET; THENCE S 76° 44' 22" E, 124.60 FEET; THENCE S 81° 11' 03" E, 113.09 FEET; THENCE S 51° 08' 11" E, 138.47 FEET; THENCE S 43° 31' 37" E, 143.24 FEET; THENCE N 60° 42' 27" E, 86.03 FEET; THENCE N 87° 18' 50" E, 105.37 FEET; THENCE N 63° 20' 08" E, 111.47 FEET, THENCE N 58° 49' 49" E, 137.13 FEET; THENCE N 67° 49' 21" E, 162.86 FEET; THENCE N 72° 01' 16" E, 109.72 FEET; THENCE N 79° 44' 19" E, 136.40 FEET; THENCE N 62° 12' 24" E, 115.40 FEET; THENCE N 78° 03' 11" E, 117.65 FEET; THENCE N 76° 49' 05" E, 73.32 FEET THENCE N 32° 53' 40" E, 74.34 FEET; THENCE N 85° 59' 45" E, 13.46 FEET TO THE RANGE LINE AND THE TERMINATION POINT OF SAID CENTERLINE.

ALSO, LOT ONE (1) OF THE SOUTHWEST QUARTER, AND THE NORTH HALF OF LOT TWO (2), OF THE SOUTHWEST QUARTER OF SECTION SIX (6), AND THE NORTH HALF OF LOT ONE (1) OF THE NORTHWEST QUARTER OF SECTION SEVEN (7), TOWNSHIP THIRTY-NINE (39) NORTH, OF RANGE FOURTEEN (14), WEST OF THE FIFTH PRINCIPAL MERIDIAN, AND CONTAINING IN ALL ONE HUNDRED FIFTY-FIVE AND SEVENTY-THREE HUNDREDTHS (155.73) ACRES, ACCORDING TO GOVERNMENT SURVEY.

ALSO, THE SOUTH HALF OF LOT NO. TWO (2) OF THE SOUTHWEST QUARTER OF SECTION NO. SIX (6), AND ALL OF LOT NO. TWO (2) OF THE NORTHWEST QUARTER OF SECTION SEVEN (7), SAVE AND EXCEPT 7.54 ACRES IN THE SOUTHWEST CORNER OF SAID LOT NO. TWO (2) OF THE NORTHWEST QUARTER OF SAID SECTION SEVEN (7), MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT NO. TWO (2); THENCE EAST ON THE QUARTER SECTION LINE 11.50 CHAINS; THENCE NORTH 28 DEGREES 22 MINUTES WEST 5.75 CHAINS; THENCE NORTH 57 DEGREES 45 MINUTES WEST 10.33 CHAINS TO THE WEST LINE OF SAID SECTION SEVEN (7); THENCE SOUTH ON THE SECTION LINE 10.58 CHAINS TO THE PLACE OF BEGINNING.

ALL OF SAID REAL ESTATE IS LOCATED IN TOWNSHIP THIRTY-NINE (39) NORTH, RANGE FOURTEEN (14) WEST OF THE FIFTH PRINCIPAL MERIDIAN.

ALSO, THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 1, IN TOWNSHIP 39, OF RANGE 15, CONTAINING 80 ACRES, MORE OR LESS.

SAVE AND EXCEPT THAT PORTION DEEDED TO THE MILLER COUNTY COMMISSION DESCRIBED IN WARRANTY DEEDS FILED FOR RECORD AT INSTRUMENT NOS. 2014-1054, 2014-1055, 2014-1057, 2014-1058, 2014-1059, 2014-1060, MILLER COUNTY RECORDER'S OFFICE.

SUBJECT TO ALL RESTRICTIONS AND RESERVATIONS, CONDITIONS AND EASEMENTS OF RECORD.

8.   Additionally, this Court divests the title of the following described property, situated in Miller County, Missouri, from Defendant, and any other person holding interest therein, and vests said interest in the name of Plaintiff in lieu of directing a conveyance:

ALL OF THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 39 NORTH, OF RANGE 15 WEST OF THE 5TH PRINCIPAL MERIDIAN, AND CONTAINING 160 ACRES, MORE OR LESS.

SAVE AND EXCEPT: A PARCEL OF LAND IN THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 12, IN TOWNSHIP 39 NORTH, RANGE 15 WEST OF THE 5TH PRINCIPAL MERIDIAN, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:  START AT A POINT IN THE CENTER OF THE BRUMLEY-BAGNELL ROAD, WHICH IS ON THE SOUTH LINE OF SAID SECTION 820 FEET EAST OF THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 12; THENCE NORTH 5 DEGREES EAST, ALONG THE CENTER OF SAID ROAD A DISTANCE OF 200 FEET; THENCE NORTH 8 DEGREES WEST, CURVING WITH THE CENTER OF SAID ROAD A FURTHER DISTANCE OF 252 FEET TO A METAL PIN; THENCE SOUTH 70 DEGREES EAST 198 FEET TO A BLACK WALNUT TREE ON THE WESTERLY BANK OF A CREEK; THENCE SOUTH 15 DEGREES EAST A DISTANCE OF 390 FEET TO A POINT ON THE SOUTH LINE OF SAID SECTION 12, WHICH IS 300 FEET EAST OF POINT OF BEGINNING, AND, THENCE WEST SAID 300 FEET TO POINT OF BEGINNING IN THE CENTER OF SAID PUBLIC ROAD. SAID PARCEL CONTAINS APPROXIMATELY 2 ¼ ACRES.

ALL THAT PART OF THE NORTHEAST QUARTER OF SECTION TWELVE (12), TOWNSHIP THIRTY-NINE (39) NORTH OF RANGE FIFTEEN (15) WEST OF THE 5TH P.M., LYING SOUTH OF THE CENTER LINE OF BEAR CREEK, SAID CENTERLINE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A FLINTSTONE MARKING THE N ¼ CORNER OF SECTION 12, T 39N. R 15 W; THENCE S 00°55'10" W ALONG THE ¼ SECTION LINE 1208.44 FEET TO THE CENTERLINE OF BEAR CREEK AND THE POINT OF BEGINNING; THENCE LEAVING SAID ¼ SECTION LINE ALONG THE CENTERLINE OF BEAR CREEK THE FOLLOWING COURSES: THENCE S 73° 10' 29" E, 78.45 FEET; THENCE S 33° 47' 31" E, 172.94 FEET; THENCE S 35° 25' 20" E, 173.72 FEET; THENCE S 40° 02' 25" E, 145.80 FEET; THENCE S 88° 12' 36" E, 227.65 FEET; THENCE S 79° 51' 10" E, 147.54 FEET; THENCE S 72° 09' 03" E, 104.29 FEET; THENCE S 77° 16' 53" E, 79.79 FEET; THENCE S 82° 20' 08" E, 71.36 FEET; THENCE S 83° 29' 23" E, 103.63 FEET; THENCE S 76° 44' 22" E, 124.60 FEET; THENCE S 81° 11' 03" E, 113.09 FEET; THENCE S 51° 08' 11" E, 138.47 FEET; THENCE S 43° 31' 37" E, 143.24 FEET; THENCE N 60° 42' 27" E, 86.03 FEET; THENCE N 87° 18' 50" E, 105.37 FEET; THENCE N 63° 20' 08" E, 111.47 FEET, THENCE N 58° 49' 49" E, 137.13 FEET; THENCE N 67° 49' 21" E, 162.86 FEET; THENCE N 72° 01' 16" E, 109.72 FEET; THENCE N 79° 44' 19" E, 136.40 FEET; THENCE N 62° 12' 24" E, 115.40 FEET; THENCE N 78° 03' 11" E, 117.65 FEET; THENCE N 76° 49' 05" E, 73.32 FEET THENCE N 32° 53' 40" E, 74.34 FEET; THENCE N 85° 59' 45" E, 13.46 FEET TO THE RANGE LINE AND THE TERMINATION POINT OF SAID CENTERLINE.

SAVE AND EXCEPT THAT PORTION DEEDED TO THE MILLER COUNTY COMMISSION DESCRIBED IN WARRANTY DEEDS FILED FOR RECORD AT INSTRUMENT NOS. 2014-1054, 2014-1055, 2014-1057, 2014-1058, 2014-1059, 2014-1060, MILLER COUNTY RECORDER'S OFFICE.

SUBJECT TO ALL RESTRICTIONS AND RESERVATIONS, CONDITIONS AND EASEMENTS OF RECORD.

9. This Judgment shall have the effect of a conveyance executed in due form of law.

10. Defendant shall provide Plaintiff with its second payment of Thirty-One Thousand Dollars ($31,000.00) less One Thousand Seven Hundred and Fifty Dollars ($1,750.00), which constitutes one half of the amount owed for the survey, within ten (10) days of this Judgment.

6. Plaintiff shall pay to Defendant $300.₁₀⁵⁰ for its responsible costs and attorneys' fees incurred herein.

So Ordered.

Electronically Filed - Miller - April 27, 2018 - 05:40 PM

Peggy D. Richardson

Judge of the Circuit Court

Dated: April 30, 2018

136